UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN LEONARD NEUMAN,[1]

    Petitioner,

v.

SHANE JACKSON,

    Respondent.

Case No. 18-12117
Honorable Laurie J. Michelson

# OPINION AND ORDER (1) DIRECTING CLERK OF COURT TO AMEND THE CASE CAPTION, (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (3) DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY, AND (4) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Steven Leonard Neuman made plans to see his former girlfriend as she was returning from a night out with friends. Neuman had words with one of the friends on the phone and the two agreed to meet and fight. When the fight was over, Neuman had stabbed to death one of the friends and injured another. Following a jury trial in Macomb County Circuit Court, Neuman was convicted of first-degree murder and assault with intent to murder. He was sentenced to life without parole on the murder charge and 35–55 years on the assault with intent to murder charge. The Michigan Court of Appeals affirmed the murder conviction but vacated the assault with intent to murder conviction.

Neuman is presently confined at the Chippewa Correctional Facility in Kincheloe, Michigan. He has filed a pro se petition with this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Neuman believes his constitutional rights were violated because the trial court erred

---

[1] The Court orders the Clerk of the Court to amend the caption to reflect the correct spelling of Mr. Neuman's last name.

in failing to instruct the jury on voluntary manslaughter and the evidence was insufficient to convict him of murder. The Michigan Court of Appeals did not unreasonably deny these claims. For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

## I.

Steven Neuman and Ceciley Rodriguez had been involved in a romantic relationship. (ECF No. 7-10, PageID.682.) They broke up in July 2014, but continued to talk and occasionally were intimate, including that New Year's Eve. Ten days later, on January 10, 2015, Ceciley called Neuman and told him she wanted to see him again. (ECF No. 7-10, PageID.686-684; ECF No. 7-11, PageID.824-825.) Neuman was at his uncle's house and had been drinking, so he called a cab and headed home. (ECF No. 7-11, PageID.824-825.) Ceciley called him from a bar where she was with three friends: Miguel Castaneda, his sister Carolyn Rodriguez, and Carolyn's fiancé Reginald Brown. (ECF No. 7-10, PageID.671-672.) Ceciley was "extremely intoxicated," and did not remember making the call (though, as the prosecutor conceded, phone records showed she did). (ECF No. 7-10, PageID.685-686.)

From the cab, Neuman called back Ceciley. (ECF No. 7-11, PageID.825.) As the Michigan Court of Appeals recounted:

> [Neuman] then proceeded to call Rodriguez over thirty times and, on the occasions that she answered, made comments that greatly upset her. Eventually, Casteneda answered Rodriguez's phone and told [Neuman] to stop calling her. [Neuman] and Castaneda exchanged insults and agreed to meet for a fight. [Neuman] testified that during the phone call he did not know who he was speaking to. When Casteneda, Brown, Rodriguez, and Castaneda's sister arrived at the meeting place, [Neuman] was already there waiting. [Neuman] testified that he had walked two blocks to get to there and that he had waited for 20 to 30 seconds before Castaneda and the others arrived.
>
> There was conflicting testimony regarding the fight itself. [Neuman] and Castaneda were the only two witnesses to observe what occurred and their accounts were markedly different. Casteneda testified that when he and Brown arrived and got out of the car, [Neuman] ran up to Brown and immediately attacked him with the knife.

2

> Casteneda saw [Neuman] repeatedly stabbing Brown and attempted to disengage [Neuman] by placing him in a choke hold. [Neuman] then stabbed Casteneda and ran off yelling a racial slur. A neighbor also testified to hearing an altercation and seeing an individual whom she was not able to identify run off while yelling a racial slur. Castaneda and [Neuman] are both white, and Brown was black. Brown had 19 stab wounds, 4 of which were described as fatal by the medical examiner. Casteneda suffered a punctured lung and was hospitalized for over a week.
>
> [Neuman] testified that the fight began as a mutual fist-fight between him and Castaneda. According to [Neuman], he and Castaneda were fighting but neither had inflicted any kind of serious hit when Brown "blind-sided" him by striking him in the ear and knocking him to the ground. [Neuman] testified that he only drew his knife after he was "blind-sided" by Brown and claimed that he swung his knife wildly at both men in self-defense in an effort to disengage them. [Neuman] denied that he thought about killing anyone when he went to the fight.

*People v. Neuman*, No. 331400, 2017 WL 3160268, at *1 (Mich. Ct. App. July 25, 2017)

At the end of the trial, the trial court instructed the jury on the lesser included offense of second-degree murder, but not on voluntary manslaughter or assault with intent to do great bodily harm as Neuman requested. Neuman was convicted of first-degree premediated murder, Michigan Compiled Laws § 750.316, and assault with intent to murder (AWIM), Michigan Compiled Laws § 750.83. The trial court sentenced him to life in prison without the possibility of parole for first-degree murder and 420–660 months in prison for AWIM. (*Id*. at *1.)

On direct appeal, the Michigan Court of Appeals affirmed the first-degree murder conviction but vacated the AWIM conviction. (*Id*.) The appellate court found that the failure to give the jury a manslaughter instruction was harmless error, but that the failure to instruct on the lesser included offense of assault with intent to do great bodily harm was not harmless error. (*Id*. at *3–4.) Thus, the case was remanded to the trial court for retrial on the AWIM charge should the prosecution wish to pursue it. (*Id*. at *4.) The court also rejected Neuman's sufficiency of the evidence and related claims. Neuman sought leave to appeal to the Michigan Supreme Court

3

raising only the jury instruction issue, which was denied. *People v. Neuman*, 501 Mich. 978, 906 N.W.2d 795 (2018).

Neuman then filed a habeas petition in this Court challenging his convictions. (ECF No. 1.) He raises the same grounds that were addressed by the Michigan Court of Appeals: (1) that he was denied his constitutional rights to a properly instructed jury and to present a defense because the trial court erred by refusing to instruct on the defense theory that Neuman was guilty of manslaughter rather than murder and guilty of assault with intent to do great bodily harm rather than AWIM; and (2) the evidence was insufficient to sustain a first-degree murder conviction. (*Id.*)

## II.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribe[s]" the standard of review that federal courts apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under the statute, a federal court may not grant habeas relief to a state prisoner with respect to any claim that has been "adjudicated on the merits in State court proceedings" unless the state-court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000).

A state court decision unreasonably applies federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts." *Slaughter v. Parker*, 450 F.3d 224, 232 (6th Cir. 2006) (citing *Williams*, 529 U.S. at 407–08). This "standard is difficult to meet." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The term "unreasonable" refers not to "ordinary error" or even to circum-stances where the petitioner offers "a strong case for relief," but rather to "'extreme malfunctions in the state criminal justice syste[m].'" *Ibid*. "In other words, a federal court may intrude on a State's 'sovereign power to punish offenders' only when a decision 'was so lacking in justification . . . beyond any possibility for fairminded disagreement.'" *Mays v. Hines*, 592 U. S. \_\_\_\_, \_\_\_ (2021) (citing *Richter*, 562 U.S. at 103)).

### III.

### A.

Neuman first argues that the trial judge violated his right to due process by refusing to instruct the jurors on voluntary manslaughter as a lesser included offense for first-degree murder and assault with intent to do great bodily harm as a lesser included offense for assault with intent to commit murder. But the Michigan Court of Appeals already vacated the AWIM conviction. So the Court will focus on the claimed error in not giving the manslaughter instruction. The Court agrees with the warden that this claim fails for two reasons.

### 1.

First, the United States Supreme Court has declined to decide whether the Due Process Clause requires that a state trial court instruct a jury on a lesser included offense in a non-capital case, i.e., one where the defendant does not face the death penalty. *See Adams v. Smith*, 280 F.Supp.2d 704, 717 (E.D. Mich. 2003) (citing *Beck v. Alabama*, 447 U.S. 625, 638 n. 4 (1980)).

Because *Beck* was a challenge based on the Eighth Amendment, the Sixth Circuit has held that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)). Thus, the state court's failure to instruct the jury on the lesser included manslaughter offense in Neuman's non-capital case was not contrary to, or an unreasonable application of, clearly established federal law. *See Bagby*, 894 F.2d at 797 (failure to instruct on lesser included offense "is not an error of such character and magnitude to be cognizable in federal habeas corpus review"); *see also Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (finding that Michigan habeas petitioner convicted of first-degree murder was not entitled to relief based upon the trial court's failure to instruct on the lesser offense of involuntary manslaughter).

**2.**

Second, the failure to instruct the jury on the lesser included offense of manslaughter was harmless in this case.

"Allegations of 'trial error' raised in challenges to jury instructions are reviewed for whether they had a substantial and injurious effect or influence on the verdict, and are subject to harmless-error analysis [under *Brecht v. Abrahamson*, 507 U.S. 619 (1993)]." *Scott v. Mitchell*, 209 F.3d 854, 882, (6th Cir. 2000). Under this standard. "[i]f the court is certain that the error had no or a small effect, the error is harmless." *Tolliver v. Sheets*, 594 F.3d 900, 924 (6th Cir. 2010). But when "'a federal judge in a habeas proceeding is in grave doubt about whether a trial error of

federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless.'" *Id*. (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)).[2]

The Court does not harbor such "grave doubt." As explained by the Michigan Court of Appeals, "the jury rejected the intermediate charge of second-degree murder for which it was given an instruction and instead convicted [Neuman] of first-degree murder. When an intermediate charge is rejected by the jury and where such a rejection indicates a 'lack of likelihood that the jury would have adopted the lesser requested charge,' the failure to give the lesser requested charge is harmless error." *Neuman*, 2017 WL 3160268, at *3 (citation omitted). The court went on, "the fact that this particular jury convicted defendant of first-degree murder, while rejecting even the intermediate charge of second-degree murder, is clear indication that it believed Castaneda's account and the reasonable inferences that could be drawn from it and that it rejected defendant's account in its entirety." *Id*.

This Court agrees that the failure to instruct the jury on manslaughter did not result in any actual prejudice. "In other words, if the jury chose [first degree] murder over second-degree murder, there is no basis to believe that it would have opted for the even lesser offense of voluntary manslaughter over [first degree] murder." *Abdus-Samad v. Bell*, 420 F.3d 614, 628 (6th Cir. 2005) (finding jury's decision to convict petitioner of felony murder even though the jury was also instructed on the lesser-included offense of second-degree murder "strongly suggests" that the trial

---

[2] The Court will apply the harmless-error standard as set out in *Brecht* in this case. The Court recognizes that the Michigan Court of Appeals found that the state trial court's failure to provide a manslaughter instruction was harmless, and as such, the combined *Chapman* and § 2254(d) standard may be appropriate. *See Davenport v. MacLaren*, 964 F.3d 448 (6th Cir. 2020), *cert. granted* No. 20-826, 2021 WL 1240919 (U.S. Apr. 5, 2021). But for now at least, the Sixth Circuit has instructed that federal district courts in this Circuit apply *Brecht*. *Davenport*, 964 F.3d at 455 ("The answer in this Circuit is that *Brecht* is always the test."). And even if this Court were to apply the combined *Chapman* and 2254(d) standard, it would reach the same result.

7

court's failure to instruct the jury on the lesser offenses of voluntary and involuntary manslaughter was at most harmless error).

Accordingly, Neuman is not entitled to habeas relief on his first claim.

**B.**

In his habeas petition, Neuman identifies his second ground for relief as coming from his "standard 4 brief on direct appeal—the evidence was insufficient to sustain a first degree murder conviction." (ECF No. 1, PageID.5.) His standard 4 brief, however, also raised claims of perjury and prosecutorial misconduct. So the Court will address all three, as did the Michigan Court of Appeals.

**1.**

At the outset, the warden argues that Neuman's remaining claims are unexhausted because he failed to raise them in his application for leave to appeal to the Michigan Supreme Court.

The doctrine of exhaustion of state remedies requires state prisoners to "fairly present" their claims as federal constitutional issues in the state courts before raising those claims in a federal habeas petition. 28 U.S.C. § 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). The exhaustion requirement is met if a prisoner invokes one complete round of the state's established appellate review process. *O'Sullivan*, 526 U.S. at 845. For a Michigan prisoner, each issue must be presented to both the Michigan Court of Appeals and the Michigan Supreme Court. *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). But Neuman's application for leave to appeal before the Michigan Supreme Court raised only the jury instruction error issue. Thus, his claims related to the sufficiency of the evidence are not exhausted. *See e.g. Robinson v. Horton*, 950 F.3d 337 (6th Cir. 2020).

And while Neuman has not yet filed a motion for relief from judgment under Michigan Court Rules § 6.502, if he were to do so, his claims would likely be procedurally defaulted by the state court because they could have been raised on direct appeal. *See* Mich. Ct. R. 6.508(D)(3). Even with these procedural deficiencies, however, the Court will decide the claims on the merits as they are clearly deficient. *See* 28 U.S.C. § 2254(b)(2); *Hickey v. Hoffner*, 701 F. App'x 422, 426 (6th Cir. 2017); *Farley v. Lafler*, 193 F. App'x 543, 549 (6th Cir. 2006).

**2.**

The Court will begin with the sufficiency of the evidence claim. Neuman asserts that there was insufficient evidence of premeditation and deliberation to sustain his first-degree murder conviction.

Under Michigan law, "[in] order to convict a defendant of first-degree murder, the prosecution must prove that the defendant intentionally killed the victim and that the killing was premeditated and deliberate." *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Premeditation may be inferred by the circumstances surrounding the killing. *People v. Marsack*, 586 N.W.2d 234 (Mich. Ct. App. 1998). Although the minimum time required under Michigan law to premeditate "is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a 'second look.'" *See Williams v. Jones*, 231 F. Supp. 2d 586, 594–95 (E.D. Mich. 2002) (quoting *People v. Vail*, 393 Mich. 460, 469; 227 N.W.2d 535 (1975)).

The Michigan Court of Appeals addressed this claim on the merits and held sufficient evidence supported the murder conviction:

> Viewing the evidence in this case in the light most favorable to the prosecution, a rational jury could have concluded that, despite defendant's assertion that he intended to engage in a one-on-one fist fight, he actually formed a premeditated and deliberate plan to kill the man who answered the phone when he called

> Rodriquez. Threats were exchanged over the phone. Defendant then proceeded to walk two blocks to where he had agreed to fight. Under these circumstances, defendant had time and opportunity to reflect on his choices. By his own admission, defendant had a knife in his jacket pocket. Although he claimed he carried it at all times for the purpose of opening beer cans, a purpose defendant himself recognized as unusual, a rational jury could infer from the fact that he had the knife in his jacket pocket that he intended to use it in the fight.

*Neuman*, 2017 WL 3160268, at *5. The Michigan Court of Appeals further noted:

> Defendant cites *People v. Gill*, 43 Mich. App. 598, 604; 204 N.W.2d 699 (1972), for the proposition that "[i]t is not reasonable to infer from mere possession of a weapon, without more, that it was pocketed with the premeditated intent of killing another person." However, as part of the totality of the circumstances in this case, defendant's possession of the knife supports a finding of premeditation. According to Casteneda, defendant was waiting for the victims when they arrived at the agreed upon meeting location and immediately attacked Brown with the knife. This evidence, viewed in the light most favorable to the prosecution, suggests that defendant lay in wait and intended to use the knife to attack the man he believed had answered the phone.

*Id.* at *5.

When, as here, a state court adjudicates an insufficient-evidence claim "on the merits," "[t]wo layers of deference apply." *McGuire v. Ohio*, 619 F.3d 623, 631 (6th Cir. 2010) (citing *Brown v. Konteh*, 567 F.3d 191, 204–05 (6th Cir. 2009)). First, the Court must apply the *Jackson v. Virginia* standard and "determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown*, 567 F.3d at 205 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id*. In short, "deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; [then] deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citation omitted).

Neuman cannot overcome this deference. The evidence at trial established that Neuman had been engaged in an argument with Castaneda over the telephone prior to the confrontation. He spent time waiting at the meeting site. He was in possession of a knife at the time of the fight. He stabbed Brown 19 times. There was sufficient evidence for a rational jury to find that Neuman acted with premeditation and deliberation. *See Scott*, 302 F.3d at 603; *People v. Oros*, 917 N.W.2d 559, 569 (Mich. 2018) (finding that defendant's act of obtaining a knife, a lethal weapon, combined with his stabbing the victim 29 times, supported a finding of premeditation and deliberation). Neuman also fled the scene and did not attempt to seek medical help for either victim, which could, in a jury's eyes, further indicate premeditation and deliberation.

In short, this Court cannot say that the Michigan Court of Appeals' rejection of Neuman's sufficiency of the evidence claim resulted in a decision that was contrary to, or involved an unreasonable application of *Jackson*. *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). "While there may have been other possible conclusions that the jury could have drawn from the evidence, a determination of premeditation 'beyond a reasonable doubt' does not require a jury to find that the evidence eliminates every other reasonable theory except that presented by the prosecution." *Titus v. Jackson*, 452 F. App'x 647, 650 (6th Cir. 2011).

Neuman is not entitled to relief on his sufficiency of the evidence claim.

### 3.

Neuman also claims that his Fourteenth Amendment rights were violated when the prosecution failed to correct Castaneda's alleged false testimony at trial. (ECF No. 1, PageID.37.)

The Michigan Court of Appeals addressed this claim on the merits and rejected it as follows: "Defendant also asserts in his Standard 4 brief that Casteneda lied under oath and that the prosecutor failed to correct the record. In support of this claim, defendant points to statements

11

Castaneda made to the police, but those statements are not part of the trial court record. Further, even if his statements to the police were inconsistent with his testimony at trial, there is nothing to suggest which version of events is the truth—Castaneda could have been lying or mistaken when talking to the police." *Neuman*, 2017 WL 3160268, at *5.

Deliberately deceiving a court and jurors by knowingly presenting false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959) (internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). A habeas petitioner, however, must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Neuman, again, has failed to show that the Michigan Court of Appeals' decision was an unreasonable application of clearly established federal law. First, he has not shown that the prosecutor knew that any of the witnesses testified falsely at the trial. *See Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir. 2009). Second, he merely points to inconsistencies between Castaneda's trial testimony and statements he made in his police report or at the preliminary examination. These inconsistencies alone are insufficient to establish that Castaneda's testimony was false, let alone that the prosecutor knew it was false. *See Coe*, 161 F.3d at 343 ("mere inconsistencies" do not show indisputable falsity). Additionally, the fact that a witness contradicts

himself or changes his story also does not establish perjury. *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).

Neuman is not entitled to habeas relief on this claim.

**4.**

Lastly, Neuman claims that the prosecutor deprived him of a fair trial by injecting race into the trial. (ECF No. 1, PageID.39.) Neuman points to the following references in the prosecutor's closing argument: mentioning that Neuman used racial slurs against Brown, who was African-American; stating that Neuman "went right after the African-American rather than Miguel"; and referring to the trial as a "black and white" issue. (*Id.*)

The Michigan Court of Appeals rejected this claim as follows:

Brown, the victim, was black while defendant and Castaneda are both white. Therefore, the fact that defendant yelled the racial slur was relevant to proving defendant's state of mind towards Brown.

Defendant also points to a remark the prosecutor made during closing argument about the case being "a black and white issue." There is nothing in the context of this remark to suggest that the prosecutor was attempting to improperly influence the jury by appealing to racially based emotions; the reference to "black and white" was clearly a metaphor about the believability of one side or the other. The prosecutor stated, "[T]he presentation of these cases is black and white. Either you buy one side completely or you buy the other."

The only race based evidence in the prosecution's case was clearly relevant to establishing the elements of the crime, namely defendant's state of mind. The prosecutor did not attempt to appeal to any passion or bias on the part of the jurors.

*Neuman*, 2017 WL 3160268, at *5 (paragraphing altered).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the

13

resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Neuman has not shown that the Court of Appeals' decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

The Michigan Court of Appeals found that evidence of Neuman's racial slur was relevant and admissible under Michigan law. A prosecutor does not commit misconduct by introducing evidence that is admissible under state law. *See Dufresne v. Palmer*, 876 F.3d 248, 261 (6th Cir. 2017) (habeas relief not warranted on prosecutorial misconduct claim arising out of prosecutor's questions about defendant's ties to white supremacist organization under investigation for murder of judge's family members where state court determined that testimony pertaining to defendant's involvement with the organization was admissible under state law, and even if not, it was not misconduct to ask questions that elicited inadmissible evidence). The same rationale would apply to the prosecutor's isolated reference in closing to Neuman going after Brown rather than Castaneda.

Moreover, it was perfectly reasonable for the Michigan Court of Appeals to find that the prosecutor's reference to something being "black and white" was not an attempt to inject race into the trial, but rather was the use of a common metaphor about the believability of the witnesses. *See People v. O'Quinn*, 147 A.D.2d 736, 736–37 (N.Y. Sup. Ct. 1989) (prosecutor's summation, in assault prosecution, that issue of credibility was "absolutely black and white," did not contain improper racial overtone).

Thus, Neuman is not entitled to relief on his prosecutorial misconduct claim.

**IV.**

For the reasons given, the Court DENIES Neuman's petition for a writ of habeas corpus. Because reasonable jurists would not disagree with this Court's analysis of Neuman's claims, the Court DENIES Neuman a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). If, however, Neuman wishes to pursue an appeal, the Court GRANTS him the right to proceed in forma pauperis on appeal. *See* 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

Dated: April 28, 2021

                                            s/Laurie J. Michelson
                                            LAURIE J. MICHELSON
                                            UNITED STATES DISTRICT JUDGE